IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
FILE NO. 1:23 CR 13

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **MOTION TO SUPPRESS AND** |
| vs. | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **(PHONE LOCATION)** |
| PAUL GORDON DAY | ) | |

NOW COMES Defendant, by and through undersigned counsel and, pursuant to the Fourth Amendment to the United States Constitution, hereby moves this Honorable Court to enter an order suppressing evidence obtained by the government subsequent to the unconstitutional search of Mr. Day's phone location data on December 19, 2022. In support of the motion, Mr. Day shows the following.

On December 19, 2022, Agent Joshua Hylton applied for a warrant to obtain Mr. Day's phone location data. The same day, a Chesterfield County, VA, magistrate approved the application and issued the warrant. [Exhibit 1].

Obtaining a person's cell phone location data from a carrier is a search which is limited by the Fourth Amendment to the constitution. *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). "The task of the issuing magistrate is simply to make a practical, common-sense decision

whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960). The reviewing court must invalidate a search warrant based on a "bare bones" affidavit, defined as "one that contains 'wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Wilhelm*, 80 F. 3d 116, 117-18 (1996).

Unlike in the November 10, 2022, warrant to search Mr. Day's car, the government did, in this instance, present sufficient facts to the magistrate to establish probable cause to believe that the bank robbery being investigated did indeed occur. However, the evidence provided was wholly conclusory as to the identity of the robber.

Agent Hylton informed the magistrate that he was investigating the robbery of the First Community Bank in North Chesterfield, Virginia, on September 29, 2022. A significant portion of Agent Hylton's

presentation to the magistrate included evidence that a bank was robbed in Asheville, North Carolina, on November 9, 2022 — more than a month later and nearly 400 miles away — implying his conclusion that the two robberies were similar in their executions. Agent Hylton offered images from both robberies, showing that the robber wore different clothes, a different hat, and different eyewear[1] in the two robberies. Importantly, Agent Hylton offered no facts at all regarding the investigation of the Chesterfield robbery from the time of its start on September 29 to the time of the warrant application on December 19. Assuming there was such an investigation, it is clear from the "facts" presented in the application that nothing suggested the involvement of Mr. Day in that robbery before Agent Hylton received word that authorities had charged Mr. Day in the later Asheville robbery. Under these circumstances, the fact that the two robberies both occurred does not make the "facts" of the second one show a greater likelihood that the same person committed both.

Agent Hylton did offer the magistrate a few later-discovered "facts" which might relate to the Chesterfield robbery, but a closer look at those reveals them to be wholly conclusory in the same fashion as the conclusion that the "facts" of the second robbery offered anything to

---

[1] In the Chesterfield robbery, the robber appears to be wearing glasses; in the Asheville robbery, he is not.

suggest the identity of the earlier robber.  First, for example, Agent Hylton reported that he had reviewed "tower dump" phone records and determined that "the cell phone in Day's possession at the time of his arrest[2] was in the area around the time of the robbery."  As an initial matter, Agent Hylton presented no "facts" to support his conclusion that the same person who possessed the phone in Asheville possessed it more than a month earlier and nearly four hundred miles away.  Even if one is willing to accept without further "facts" that a person who possessed a phone in November is likely the same person who possessed the phone in September, Agent Hylton's presentation of what the "tower dump" records showed is highly misleading.  Agent Hylton described the area searched as "sparsely populated," yet the records from T-Mobile show that the tower was accessible within a quarter mile radius and that 15,245 cell phones contacted the tower in the forty-five minute period examined. [Exhibit 2].  Even allowing the likelihood that several of those entries include the same phone contacting the tower more than once, it is fair to estimate (conservatively) that over 10,000 cell phones contacted the tower in forty-five minutes in this "sparsely populated" area.  Therefore, the

---

[2] All information regarding "the cell phone in Day's possession at the time of his arrest" is derived from the seizure of the phone following a search of his car pursuant to a search warrant which, in a different motion filed this day, Mr. Day has argued was itself unconstitutional.

presence of any one of those phones in the area, even if accepted by this court, shows little likelihood that the person with the phone was the robber of the bank.

Agent Hylton's presentation to the magistrate was also misleading regarding the activity of the phone itself and how those "facts" might support his conclusion. Agent Hylton reported to the magistrate that the robber entered the bank at 3:53 P.M. and "left the area on foot at approximately 3:54 P.M." Agent Hylton also correctly reported to the magistrate that the cell phone in question "was likely stationary [between] 3:44 P.M. and 3:48 P.M." There are no "facts" in the application which suggest why the fact that the cell phone was stationary five minutes before the robbery should suggest that it was related to the robbery. Moreover, Agent Hylton did not even report to the magistrate that the same phone appeared to be stationary (in a different location) from 3:58 to 4:04, which directly contradicts his assertion that "the device appears to be leaving the area on Koger Center Blvd or Carmia Way at 3:59 P.M." [Exhibit 3]. It is clear from Agent Hylton's incomplete presentation to the magistrate that the "facts" presented in the application do not support the "wholly conclusory" statements in the warrant application that the "tower dump" records show Mr. Day's cell phone to be involved in the Virginia robbery.

Discounting — as this court should — Agent Hylton's citation to an unsimilar bank robbery and misleading cell phone records, the court might consider two additional "facts" in support of the warrant. Agent Hylton informed the magistrate (visually) of "several items of clothing consistent with that which was worn … during the [Virginia] bank robbery" which other agents found in an unrelated search[3] of a Tennessee hotel room rented by Mr. Day six weeks after the Virginia robbery. As an initial matter, Agent Hylton cited several flat caps "consistent with the style" of the cap worn by the Virginia robber. Since none were the same color and there is no information about the maker, "consistent" as alleged in the application appears to mean "roughly the same shape." That description is insufficiently particular to defeat Mr. Day's argument that the warrant application is "wholly conclusory" rather than based in objective fact. The two items of clothing which are arguably "consistent" with the images from the Virginia robbery are a blue sport coat and a white button-up shirt with a collar. Those items are simply too commonly worn to enhance the agent's conclusion from "wholly conclusory" to factually supported by the totality of circumstances.

---

[3] All information regarding the items of clothing from the hotel room is derived from the seizure of items following a warrantless search which, in a different motion filed this day, Mr. Day has argued was itself unconstitutional.

The second "fact" is the recorded conversation wherein Mr. Day's father told Mr. Day that "your mother and I looked at the pictures from Richmond and we can tell it's you." The report of this conversation is as confusing as it is troubling since Agent Hylton did not explain how Mr. Day's parents could have seen the "pictures from Richmond." Agent Hylton did not report showing the images to Mr. Day's parents. Agent Hylton did not report showing the images to Mr. Day and, though other reports in the case indicate that he did show Mr. Day the images *while Mr. Day was in jail*, does not attempt to surmise how Mr. Day's parents in Tennessee would have seen pictures from a Virginia bank robbery which by then had occurred three months earlier and had only made their way via Agent Hylton to a jail in Asheville. A truly "neutral and detached" magistrate would have requested that explanation and, assuming the magistrate did, he or she therefore approved the warrant without requiring that explanation to appear in the application. And if Mr. Day's parents had not seen the "pictures from Richmond," it is even more disturbing that the agent included in the application the highly misleading "fact" that Mr. Day's father said they did. With no factually supported reason to believe that Mr. Day's father was doing anything other than exaggerating his knowledge of the case to support to his son his decision

not to post bail[4], the statement similarly fails to enhance the agent's conclusion from "wholly conclusory" to factually supported by the totality of circumstances.

  WHEREFORE Defendant moves this Honorable Court to enter an order suppressing evidence obtained by the government subsequent to the unconstitutional search of Mr. Day's phone location data on December 19, 2022.

  THIS the 21st day of July, 2023.

_____
/s/ Eric J. Foster
Attorney for the Defendant
22 South Pack Square, Suite 300
Asheville, North Carolina 28801
(828) 771-4787

**CERTIFICATE OF SERVICE**

  I hereby certify that I served a copy of the foregoing Motion to Suppress and Memorandum in Support (Phone Location) on the following by filing it electronically with the Court.

    Mr. Alex Scott
    Assistant United States Attorney
    100 Otis Street
    Asheville, North Carolina 28801

  THIS the 21st day of July, 2023.

---

[4] In December, Mr. Day had yet to be charged in federal court — where this court detained him pretrial — and could legally post bail in order to be released.

_____
/s/ Eric J. Foster