IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | DOCKET NO. 1:23-CR-13 |
| PAUL GORDON DAY | |

**Government's Response to the Defendant's Motion to
Suppress Cell-Site Location Information (Doc. 35)**

A cell phone follows its owner wherever he goes. This proved especially problematic for Paul Gordon Day, who brought his phone with him to rob banks in Virginia and North Carolina. The cell-site location information (CSLI) from that device was effortlessly recorded by T-Mobile and confirms Day's presence at both crime scenes. Because the Government obtained these records through a valid search warrant, Day's *Motion* should be denied.

### Facts[1]

#### *Investigators Connect Day to a Bank Robbery in Virginia*

On September 29, 2022, First Community Bank just outside of Richmond, Virginia, was robbed at gunpoint. The perpetrator was a white male who masked his identity with a hat, sunglasses, and surgical mask. In no small part because of the

---

[1] The facts describing *The Robbery of PNC Bank* and *The Arrest of Day* are set forth in the Government's *Response to the Defendant's Motion to Suppress Location Data and Arrest*. (Doc. 39). Details of *The Search of Day's Kia* are found in the Government's *Response to the Defendant's Motion to Suppress Search of his Vehicle*. (Doc. 40). Each *Response* is incorporated by reference.

1

robber's well-planned efforts to avoid detection, FBI Task Force Officer Josh Hylton's investigation soon stalled.

Weeks later, Day robbed PNC Bank is Asheville on November 9. Day then made a phone call to his mother and talked about his motel room at the Red Roof Inn in Johnson City, Tennessee. Room 227 of the Red Roof Inn was then searched by the Tennessee Bureau of Investigation. TBI Special Agent Garrison associated items he found in the room with a bank robbery in Nashville. TFO Hylton eventually reviewed these photos and noted that "several items of clothing" were consistent with what the unknown man wore when he robbed First Community Bank in Richmond, Virginia. (*Search Warrant Affidavit*, Doc. 35-1 at 13). TFO Hylton also learned that the Asheville Police Department recovered Day's cell phone, with IMEI number ending in *502, during a search of Day's Kia Sportage.

To further his investigation, on December 6, Officer Hylton lawfully obtained a search warrant for T-Mobile cell tower dump records from the area surrounding First Community Bank at the time it was robbed.[2] The goal was to identify cellular devices in close proximity to the bank when it was robbed. One of the cell phone IMEI numbers disclosed by T-Mobile matched the cell phone IMEI number on Day's phone recovered following the PNC Bank robbery.

Knowing the cell phone Day had on November 9 was present near First

---

[2] Day does not challenge the lawfulness of Officer Hylton's December 6 search warrant for T-Mobile cell tower dump records.

Community Bank, Officer Hylton obtained a search warrant for CSLI. (*Search Warrant Affidavit*, Doc. 35-1). Specifically, CSLI records from September 1, 2022 at 12:01 EDT to November 9, 2022 at 11:59 EDT. (*Id.* at 21). This time frame covers the Virginia robbery through the time the cell phone was secured by law enforcement in Asheville.

## Argument

In an effort to distract from the undeniable fact that his cell phone was present in the area of two distinct bank robberies that are separated by forty-one days and 400 miles, Day makes isolated attacks on the sufficiency of probable cause in the search warrant affidavit. He wrongly concludes that TFO Hylton's search warrant lacked probable cause to obtain cell-site location information.

### I. All requirements were satisfied for a lawful search warrant.

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures, and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The Supreme Court has recognized a person to have an expectation of privacy "in the record of his physical movements as captured through CSLI." *Carpenter v. United States*, ––– U.S. –––, 138 S. Ct. 2206, 2217 (2018). Government acquisition of CSLI from a service provider is a "search" within the meaning of the

3

Fourth Amendment. *Id.* Accordingly, the government must generally obtain a search warrant supported by probable cause before acquiring CSLI records. *Id.* at 2221.

The Supreme Court has interpreted the Fourth Amendment to establish only three requirements for warrants: (1) they must be issued by a neutral and disinterested magistrate; (2) supported by probable cause; and (3) particularly describe the place to be searched and the things to be seized. *Dalia v. United States*, 441 U.S. 238, 256 (1979) (citations and quotations omitted). When called upon to review the probable cause offered to support a warrant, the reviewing court "must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996); *see also United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990).

Day's lone contention is that the search warrant for CSLI lacked probable cause to show he was involved in each robbery. He makes no argument regarding the other requirements for a valid search warrant.

The task of the issuing magistrate is simple: to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It is important to remember that the probable cause standard guiding the issuing magistrate is a fluid concept that turns on the assessment of probabilities in particular factual contexts. *Id.* at 232.

4

The search warrant affidavit meets this probable cause standard. Officer Hylton described how and why he was able to ascertain that a cell phone with a unique IMEI number was in proximity to First Community Bank when it was robbed. He detailed how a cell phone with that unique IMEI number was found with Day forty-one days later immediately following a second bank robbery. The timing and location of the cell phone activity provided a substantial basis to believe that Day was responsible for the robberies, and that the requested CSLI would provide useful evidence in confirming that conclusion.

By arguing that investigators should have included additional information—such as the details of Officer Hylton's investigation between September 29 and the time of the search warrant, or how Day's father viewed surveillance photos—Day misconstrues the nature of the probable cause inquiry, something guarded against by the Fourth Circuit in *Blackwood*. Day's claimed omissions are irrelevant to the determination of what the magistrate was presented with. They cast no doubt on whether or not the magistrate could have concluded that there was a fair probability that evidence of the crimes would be found with T-Mobile.

II. **The CSLI evidence was obtained in good-faith reliance on the search warrant.**

Even assuming the search warrant was legally deficient, there is no evidence of misconduct that would justify applying the exclusionary rule. The exclusionary rule is a drastic remedy and society pays a high price for its use. *See Herring v. United*

5

*States*, 555 U.S. 135, 144 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.").

Evidence seized by police in "objective good faith" reliance on a facially valid warrant is admissible even when that warrant is later found to be invalid because of insufficient probable cause. *United States v. Leon*, 468 U.S. 897, 920 (1984). When an officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way because there is no police illegality to deter. *Id.* at 920-21.

The are no doubt circumstances under which an officer "will have no reasonable grounds for believing that [a] warrant was properly issued." *Id.* at 922-23. Circumstances where exclusion is appropriate include:

> the magistrate . . . in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . [or] where the issuing magistrate wholly abandoned his judicial role . . . [or] an affidavit [was] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . [or] a warrant [was] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923 (internal quotation marks and citations omitted).

To exclude this evidence, the Court must find that Officer Hylton's conduct was "sufficiently deliberate" that exclusion could "meaningfully deter" similar

conduct in the future. *See Herring*, 555 U.S. at 144. Similarly, the Court would have to conclude that Officer Hylton's actions were "sufficiently culpable" that deterrence is worth the price paid by the justice system in excluding evidence that is highly relevant to a serious violent crime. *See id.*

Here, Officer Hylton and the other investigators acted in "objective good faith" in relying on the search warrant. There is no basis to claim that the magistrate wholly abandoned his judicial role in issuing the search warrant at issue. The affidavit submitted in support of the search warrant, based on the arguments above, was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Nor is there any allegation that the search warrant was so facially deficient that the executing officers could not reasonably presume it to be valid.

Application of the exclusionary rule, as advocated by Day, would amount to nothing more than an undeserved legal windfall. Officer Hylton lawfully obtained a cell tower dump and identified the IMEI number matching the cell phone taken from Day in Asheville more than forty days after the robbery in Virgina. One cell phone being in the area of two bank robberies, during the time each occurred, is sufficient for any reasonable officer, and magistrate, to suspect that the same person perpetrated the robberies. This gave probable cause to obtain the CSLI records.

7

Case 1:23-cr-00013-MR-WCM    Document 41    Filed 08/10/23    Page 7 of 8

There was no police illegality and nothing to deter. The application was more than a bare bones recital of wholly conclusory statements. Officer Hylton was not dishonest or reckless in preparing his affidavit. The application of the exclusionary rule is inappropriate in this case.

## Conclusion

Officer Hylton obtained CSLI records through a valid search warrant. Nothing more could be asked of him in this situation. Day's *Motion* is without merit and should be denied.

DENA J. KING
UNITED STATES ATTORNEY

*/s/ Alex M. Scott*
Alex M. Scott, Kansas Bar No. 25490
Assistant United States Attorney
100 Otis Street, Room 233
Asheville, North Carolina 28801
(828) 271-4661
alex.scott@usdoj.gov